**In re Anonymous No. 1 D.B. 98**

Disciplinary Board Docket no. 1 D.B. 98.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

IOLE, *Member,* February 4, 1999—

## I. HISTORY OF PROCEEDINGS

A petition for discipline was filed by Office of Disciplinary Counsel against respondent, [    ], on January 6, 1998. The petition charged respondent with violations of Rules of Professional Conduct 1.2(a), 1.16(a)(1), and 8.4(c) based on his conduct during his representation of the estate of [A]. Respondent filed an answer to the petition on January 20, 1998.

A disciplinary hearing was held on April 20, 1998 before Hearing Committee [    ] comprised of Chair [    ], Esquire, and Members [    ], Esquire, and [    ], Esquire. Respondent was represented by [    ], Esquire. Petitioner was represented by [    ], Esquire.

The Hearing Committee filed a report on September 21, 1998 and recommended a public censure. No briefs on exceptions were filed by the parties.

This matter was adjudicated by the board at the meeting of November 18, 1998.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent was born in 1952 and was admitted to practice law in Pennsylvania in 1977. His office is lo-

cated at [ ]. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) In or around July 1996, [B] contacted respondent for legal advice concerning the handling of the estate of his father, [A].

(4) At the time [B] approached respondent, his father was incapacitated and in a coma, resulting from a very serious motor vehicle accident.

(5) Respondent met with [B] at his law office on July 18, 1996.

(6) During this meeting, respondent advised [B] that an incapacity petition could be filed by the immediate family, which consisted of the three children of the father—[B], [C] and [D]. Respondent explained that this filing would result in the appointment of a guardian for the father.

(7) [B] told respondent that the family wanted to avoid the expense and effort of going to court.

(8) Thereafter, respondent advised [B] that:

(a) a power of attorney could be made if the father could sign it or if someone would sign it on behalf of the father;

(b) he would prepare the power of attorney in favor of [B] if all three children were in agreement.

(9) Respondent knew from [B] that the father was incapacitated and unable to execute legal documents.

(10) Respondent counseled [B] to engage in conduct that respondent knew was improper and potentially fraudulent.

(11) [B] retained respondent to draft a power of attorney.

(12) On July 22, 1996, in the presence of [B], respondent drafted a power of attorney.

(13) In respondent's presence, and with [B's] sister, [C], in the office, [B] signed his father's name on the power of attorney.

(14) Respondent notarized [B's] signature as that of the father despite knowing that it had been executed by [B].

(15) At the July 22, 1996 meeting, [B] and [C] told respondent that their brother, [D], was in agreement with this course of conduct but that he was in the middle of a divorce and did not want to be involved.

(16) Respondent testified he was paid between $85 to $100 for his services. Respondent indicated he received no other compensation, benefits, or legal fees for his services in this matter.

(17) On August 6, 1996, [B] informed respondent that he had lost the power of attorney.

(18) On August 6, 1996, respondent drafted and notarized another power of attorney signed by [B] in his father's name.

(19) On November 13, 1996, respondent received a telephone call from [D] who advised him that [B] had left the state and had taken all of the father's money.

(20) Respondent testified that, between July 1996 and November 1996, he had not heard from either the sister or brother, nor did he receive any complaints from them. Further, respondent testified that [D] was living with [B] at the father's house in [   ].

(21) Respondent testified he retained an investigator and made efforts to locate [B] or to have the allegedly missing money returned.

(22) Respondent then reported himself through his attorney, [E], Esquire, to the Office of Disciplinary Counsel by letter dated November 29, 1996, wherein he fully admitted his misconduct.

(23) Respondent has no prior record of discipline.

(24) Respondent testified that, as part of his investigation, he discovered that [B] held most of the allegedly missing assets in joint name with his father. Therefore, [B] would have been able to take these assets without the power of attorney.

(25) Respondent fully cooperated with the Office of Disciplinary Counsel after reporting himself and sent follow-up letters providing additional information to Assistant Disciplinary Counsel on December 27, 1996 and January 8, 1997.

(26) Respondent testified that, in his many years of practice, he had never done anything like that before and would never do it again. Respondent testified that he tried to help the family through his actions but he fully admitted it was a major mistake of judgment. He admitted that he should have filed for a guardianship.

(27) Respondent has given up his notary license.

(28) Other than respondent's self-reporting, no complaint has been filed with the Office of Disciplinary Counsel by either the brother, the sister or anyone acting on behalf of the father or any family member.

(29) Respondent expressed sincere and complete remorse for his misconduct.

### III. CONCLUSIONS OF LAW

Respondent's conduct has violated the following Rules of Professional Conduct:

(1) R.P.C. 1.2(d)—A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

(2) R.P.C. 1.16(a)(1)—A lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the representation will result in violation of the Rules of Professional Conduct or other law.

(3) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

This matter is before the board upon consideration of a petition for discipline filed against respondent by Office of Disciplinary Counsel on January 6, 1998. The petition charged respondent with violations of Rules of Professional Conduct 1.2(a), 1.16(a)(1), and 8.4(c)

This matter was brought to the attention of the Office of Disciplinary Counsel by respondent, who self-reported his misconduct on November 29, 1996. Respondent admitted the facts of the matter and his violations of the rules.

The facts of record evidence that respondent counseled and assisted his client to engage in conduct which respondent knew to be actually or potentially fraudulent. Respondent's client, [B], sought advice from respondent

relative to his father's estate. His father was incapacitated and in a coma at the time. Respondent advised [B] that an incapacity petition could be filed by the family for the appointment of a guardian. [B] wanted to avoid the expense of such proceedings, so respondent advised [B] that a power of attorney could be made if someone signed on behalf of the father. Respondent knew the father was incapacitated and unable to execute legal documents. Nevertheless, respondent drafted the power of attorney. In the presence of respondent, [B] signed his father's name to the document and respondent notarized the signature, despite knowing it was not a true signature.

Respondent has practiced law for more than 20 years and knew that his advice to his client was wrong. Prior cases with similar facts have resulted in public discipline. In two reported cases, attorneys executed false documents. In each case, the attorney received a public censure. *In re Anonymous No. 20 D.B. 77,* 14 D.&C.3d 239 (1978) (false affidavit of fair market value for real estate transfer); *In re Anonymous No. 61 D.B. 82,* 29 D.&C.3d 534 (1983) (false signature of township supervisors affixed to purchase agreement).

While the instant case shares similar facts, there are mitigating factors that differentiate this case from the cited cases, and that persuade the board that a public censure is not appropriate discipline in this specific case.

Foremost in importance is the fact that respondent reported his own misconduct to Office of Disciplinary Counsel. It is a rare case in which an attorney self-reports unethical behavior. Nor was this a situation where

respondent was prodded into action by a client threatening to make a complaint to the Disciplinary Board. No complaint ever was made by any of the [B] family members. Indeed, there was no proof that [B] actually disappeared with assets.

Other mitigating factors are respondent's full cooperation with petitioner, his other attempts to rectify any harm engendered by his misconduct, his sincere expression of remorse, his lack of personal gain from his misconduct, and his lack of prior disciplinary record. In the board's view, these factors mitigate the discipline from a public censure to a private reprimand.

## V. DETERMINATION

The Disciplinary Board of the Supreme Court of Pennsylvania determines that the respondent, [   ], shall receive a private reprimand. The expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Elliott did not participate in the November 18, 1998 adjudication.

## ORDER

And now, February 4, 1999, upon consideration of the report and recommendation of Hearing Committee [   ] filed September 21, 1998; it is hereby ordered that the said [respondent] of [   ] be subjected to a private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement.

Costs are to be paid by the respondent.